FILED

June 3, 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____
                    DEPUTY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>Plaintiff,<br>v.<br><br>**DAVID BYRON SEIBERT,**<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§    NO. **1:21-CR-00104-RP**<br><br>[Violations: Count One: Wire Fraud, 18 U.S.C. §1343; Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity, 18 U.S.C. §1957.]<br><br>Notice of Government's Demand for Forfeiture |

## FELONY INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

### Introduction

1. The following entities (hereinafter referred to individually or collectively as the "Siebert Entities") were formed at the direction of, used by, and/or maintained by, the Defendant, David Byron Siebert ("Seibert") and/or (the "Defendant"):

   a. Seibert Equity Investments, aka: SEI Equity Investments ("SEI"). According to Comprehensive Business Reports, Seibert Equity Investments is an assumed name entity and was initially registered on or about November 2, 2006. The Standard Industrial Classification Code 6282 listed for this entity is "Investment Advice." The recorded address for Seibert Equity Investments is 103 Palos Verdes Drive, Lakeway, Texas 78734 ("Seibert's Residence").

  b. Great American Funding LLC, aka: Great American Funding Lender Service ("GAF"). According to Nevada Secretary of State, GAF is a domestic limited liability company registered in the state of Nevada and was initially registered on or about June 28, 2006. The current business license expired on or about June 30, 2019. The Defendant is listed as a "manager," and Seibert's Residence is listed as an address associated with GAF.

  c. From at least as early as January 2016, the primary place of business for the aforementioned entities is Lakeway, Texas, located within the Western District of Texas.

2. Since at least 2016, the Defendant promoted and sold interest in several investment opportunities and obtained over $14 million. These "investments" provided short-term secured loans in return for the promise of high interest from third-party borrowers, when in fact, none of the investments existed.

3. The Defendant used and/or maintained the following accounts:

  a. Bank of America Account ending in xx0021 ("Seibert's BOA Account") is an account registered to David Seibert and Sxxx Seibert ("SS"). The address associated with this account is Seibert's Residence. SS is Seibert's adult aged daughter. This account was represented to be the business and operating account of Great American Funding/ Seibert Equity Investments (SEI) but proved to merely be the shared personal bank account of the Defendant and SS.

  b. Straits Financial Group Account ending in xx0387 ("Seibert's Straits Account") is an account held by David Seibert. The address associated with this account is Seibert's Residence. Seibert's Straits Account was an account used to trade futures and

*Seibert, David / Felony Information—Page 2 of 12*

options on futures in the commodities market. Seibert completed a customer application for the above account in or about March 2017.  In the account application, Seibert fraudulently claimed to be employed by "Seibert Equity Investments" (SEI) with an individual annual income of $300,000 and net worth of $10,000,000.  Additionally, Seibert checked "no" when asked "Does any other person or entity have any financial interest in the account?"

        c.      AMEX Account xxxx7-31019 is an account utilized by Seibert ("Seibert's AMEX Account"). The master account is assigned to SS, AMEX Account xxxx7-31001. The listed mailing address for both accounts is Seibert's Residence. Payments to AMEX were made from Seibert's BOA Account.

### The Scheme

4.      Beginning at least as early as 2016 and continuing until in or about May 2019, the Defendant devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

5.      The object and purpose of the Scheme was for the Defendant to enrich himself unjustly and illegally through false, misleading, and fraudulent pretenses, representations, and promises, and material omissions to Investors who were individuals, charitable trust, and business entities (the "Investors"). Beginning as early March 2016 and continuing until May 2019, the Defendant executed a scheme to defraud whereby the Defendant received monies from the Investors who relied upon false and fraudulent representations and material omissions made by the Defendant. In summary, the Defendant told the Investors that he would pool their money to fund short-term, high-interest commercial loans, when in fact he did not. Without permission or authorization, the Defendant stole these monies and used said monies to (1) to make Ponzi

payments; (2) to trade futures and option on futures in the commodities market; and (3) for personal expenses.

6. The Defendant misrepresent to the Investors that he and his company, GAF, were in the business of making short-term, high interest loans to borrowers in order to make renovations, additions, or repairs to existing properties to meet cash needs before permanent financing could be secured. These loans are often referred to as "hard money loans," "bridge loans," or "land loans." The Defendant advised the Investors that he would be responsible for completing the due diligence, preparation of the loan documents, servicing the loan, and closing. Each loan was represented to be an interest only loan with a balloon payment of all principal after a term of approximately one year. According to the Defendant, the loan was to be secured by a first lien deed of trust on the real property, a security interest on the assets of the debtor, and a personal guarantee.

7. It was part of the scheme and artifice that the Defendant made false and fraudulent promises, representations, omissions, and pretenses to solicit the Investors and claimed that the funds would be used to provide short-term secured loans in return for the promise of high interest from third-party borrowers who purportedly would use the loaned funds to make renovations, additions, and repairs to property before permanent financing could be secured. The Defendant represented that he would be responsible for completing the due diligence, preparation of the loan documents, servicing the loan, and closing.

8. It was part of the scheme and artifice that the Defendant would fraudulently acquire investment funds for the following purposes:

    a. to maintain an ongoing or expanding Ponzi scheme in which the "returns" paid to earlier Investors actually constituted funds provided by later Investors;

      b.    to make payments and/or fund distributions to some Investors so as to lull Investors into the mistaken belief that their investment remained sound;

      c.    trade futures and options on futures in the commodities market; and

      d.    for personal expenses.

9.    It was part of the scheme and artifice that the Defendant, through one or more of the Seibert Entities, would acquire cash and assets from individual Investors from across the United States by means of false and fraudulent promises, representations, pretenses, and material omissions.

10.    It was part of the scheme and artifice that the Defendant transmitted and caused to be transmitted wire communications in interstate commerce, writings, signals, signs, pictures and sounds to and from the Western District of Texas to locations outside of the State of Texas. These wire communications included, but were not limited to, the following:

      a.    telephone calls;

      b.    email communications via the internet;

      c.    electronic communications involving the clearing of checks and other financial transactions through the Federal Reserve banking system;

      d.    transfer by wire and electronic means of funds between financial institutions and investment companies located outside the State of Texas and financial institutions and investment companies in the Western District of Texas.

11.    It was part of the scheme and artifice that the Defendant represented that the Seibert Entities purchased assets with the funds obtained from the Investors when, in truth and fact, the Investors' funds were applied toward other fraudulent investment activities: the payment of "dividends," "returns," and "redemptions" to prior Investors; trading futures and options on futures in the commodities market; and the Defendant's own personal use and benefit.

12. It was part of the scheme and artifice that accurate and material cash flow and accounting information was not provided to the Investors.

13. It was part of the scheme and artifice that the Defendant omitted and failed to disclose material facts to potential Investors and current clients, including but not limited to the following:

- a. that Investors funds had been, and would be, funneled and diverted to making Ponzi-type payments to prior Investors;
- b. that the Defendant traded futures and options on futures in the commodities market and for personal expenses, and
- c. that the Defendant used a substantial portion of Investors' funds for the personal use and benefit of himself.

## Manner and Means

The Defendant carried out the scheme in the following manner and by the following means:

14. The Defendant utilized interstate wire transmissions in furtherance of the scheme. For example, The Defendant utilized interstate wires to receive investment monies and transmit fictitious investment payments to the Investors based upon false and fraudulent misrepresentations and material omissions. The Defendant could not have carried out the fraudulent scheme without the benefit of interstate wire communications.

15. Because of the nature of the monetary transactions (i.e., wire transfer and credit card purchases), the Defendant used electronic communication to conduct the Scheme. Because the transactions took place in many locations, the Defendant transmitted the electronic communications in interstate or foreign commerce.

## Execution of the Scheme via Wire Transmission

16. Once the Investors decided to participate in the Defendant's fraudulent deals, the Defendant instructed the Investors to either write a check made payable to him personally or, more frequently, to wire the funds to a bank account which he said was held in the name of GAF. In truth, the funds were pooled in Seibert's BOA Account.

17. After the closing, the Defendant paid some of the Investors monthly "interest" payments on the loans, representing to the Investors they were paid by the borrower in the loan/investment deal. In reality, the payments derived from funds of subsequent Investors, which the Defendant paid out in the manner of a Ponzi scheme. In all, the Defendant used over $4 million to pay "returns" to earlier Investors, but the monies actually constituted funds provided by later Investors.

18. When the loans never came to fruition, he began using the Investor's monies to trade in commodity interests without disclosing the use to the Investors. During the Relevant Period, the Defendant used and lost over $8 million of Investors' funds trading commodity interest in a commodity account bearing his name. The Defendant traded through Seibert's Straits Account.

19. Throughout the Relevant Period, the Defendant used the Investor's monies for his personal expenses in the amount over $2 million. Many of those expenses were incurred with the use of Seibert's AMEX Account.

20. The Defendant omitted to disclose to the Investors that instead of using their funds to make bridge loans as he had promised, he was actually pooling their funds with other Investors and using them to make Ponzi payments, trade commodity interests, and use for his personal expenses.

*Seibert, David / Felony Information—Page 7 of 12*

## COUNT ONE
## Wire Fraud
## (Violation of 18 U.S.C. §1343)

21. Paragraphs 1 through 20 of this Information are realleged and incorporated as though fully set forth herein.

From in or about 2016 and continuing until in or about May 2019, in the Western District of Texas and elsewhere, the Defendant,

**DAVID BYRON SEIBERT,**

("the Defendant"), having devised and intended to devise a scheme and artifice to defraud, as set forth above, to obtain money and property by means of false, misleading, and fraudulent pretenses, representations, and promises, and omissions of material facts, did knowingly cause to be transmitted by wire, radio, or television communication in interstate and foreign commerce, a wire transfer of funds, constituting and containing a writing, sign, signal, picture, and sound, for the purpose of executing and attempting to execute said scheme and artifice, on or about the date set forth below.

On or about August 5, 2018, the Defendant sent an email from his personal email account <dseibert@austin.rr.com> to Investors John Harris, Edward Blum, and Donald Clayton. The email was a solicitation for an investment opportunity in El Paso, TX and more specifically at Commerce Park a 120,000 sq. ft. office park. The purported investment was a cumulative loan of $1,700,000 earning 13% over a year. Pursuant to this email solicitation, the below Investors provided their proceeds as follows:

| Investor(s) | Date (on or about) | Amount | Method | From Financial Institution(s) | To Financial Institution |
|---|---|---|---|---|---|
| Diana Weil Family Trust | 08/13/2018 | $100,000 | Wire | JP Morgan Chase, New York, NY | Seibert's BOA Account-Austin, Texas |
| Nancy Roucher | 08/14/2018 | $100,000 | Wire | Wells Fargo, San Francisco, CA | Seibert's BOA Account-Austin, Texas |
| BHW Family LP | 08/14/2018 | $100,000 | Wire | Citibank, New York, NY | Seibert's BOA Account-Austin, Texas |
| Donald Clayton | 08/15/2018 | $800,000 | Wire | Citibank, New York, NY | Seibert's BOA Account-Austin, Texas |
| Edward Blum | 08/15/2018 | $100,000 | Wire | Citibank, New York, NY | Seibert's BOA Account-Austin, Texas |
| John Harris | 08/15/2018 | $400,000 | Check | Morgan Stanly, Kansas City, MO | Seibert's BOA Account-Austin, Texas |

All in violation of Title 18, United States Codes, Sections 1343.

**COUNT TWO**
**Engaging in Monetary Transactions in Property**
**Derived From Specified Unlawful Activity**
**(Violation of 18 U.S.C. §1957)**

22. Paragraphs 1 through 21 of this Indictment are realleged and incorporated as though fully set forth herein.

23. From in or about 2016 and continuing until in or about May 2019, in the Western District of Texas and elsewhere, the Defendant,

**DAVID BYRON SEIBERT,**

did knowingly engage and attempt to engage in a monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is deposit, withdrawal, transfer, or exchange of U.S currency, funds, and monetary instruments, such property having been derived from a specified unlawful activity: Wire Fraud, as described in Count One of this Information, and contrary to Title 18, United States Code, Section 1343, as follows:

Immediately following the investment(s) into the El Paso property at Commerce Park, on or about August 17, 2018, the Defendant made a $11,930.86 payment from Seibert's BOA Account-Austin, Texas, a financial institution, to Seibert's AMEX Account; and the following transfers from Seibert's BOA Account-Austin, Texas, a financial institution, to Seibert's Straits Account:

| Date (on or about) | Amount |
|---|---|
| 08/17/2018 | $200,000 |
| 08/31/2018 | $80,000 |

All in violation of Title 18, United States Codes, Section 1957.

### NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
[*See* FED. R. CRIM. P. 32.2]

**I.**
**Wire Fraud Violation and Forfeiture Statute**
**[Title 18 U.S.C. §1343, subject to forfeiture pursuant Title 18 U.S.C. § 981 (a)(1)(C)]**

As a result of the criminal violations set forth in Count One, the United States of America give notice to the Defendant David Byron Siebert of its intent to seek the forfeiture of property, including the items listed below, upon conviction and as part of sentencing pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), which states:

> **Title 18 U.S.C. § 981.  Criminal Forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> **(C)** Any property, real, or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specific unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

**II.**
**Money Laundering Violation and Forfeiture Statutes**
**[Title 18 U.S.C. §1957 and subject to forfeiture pursuant Title 18 U.S.C. § 982(a)(1)]**

As a result of the foregoing criminal violation set forth in Count Two, the United States gives notice to the Defendant David Byron Siebert of its intent to seek the forfeiture of properties, including the items listed below, Defendant shall forfeit all right, title, and interest in said properties to the United States pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982.  Criminal Forfeiture**
> **(a)(1)** The court is imposing sentence on a person convicted of an offense in violation of sections 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to, the properties described below in Paragraph III.

### III.
### Subject Properties

- Silver Band Breitling Gold Ring Around Face watch;
- Silver Breitling Yellow Face watch;
- Rose Gold & Diamond Bulgari ring;
- $5,000.00, more or less, in United States Currency; and
- Any and all other items used and/or intended to be used in the commission of the criminal offenses.

**Money Judgment:**
A sum of money equal to Fourteen Million Nine Hundred Ninety Three Thousands and Thirty Three Dollars ($14,993,033.00) represents the properties involved in and/or the amount of proceeds traceable, directly or indirectly, to the violations set forth in Counts One and Two, for which Defendant David Byron Siebert is liable.

**Substitute Assets:**
If any of the properties described above, as a result of any act or omission of Defendant David Bryon Siebert:

a. Cannot be located upon the exercise of due diligence;
b. Has been transferred or sold to, or deposited with, a third person;
c. Has been placed beyond the jurisdiction of the Court;
d. Has been substantially diminished in value; or
e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of any other properties owned by Defendant up to the value of the Money Judgment as substitute assets, pursuant to FED. R. CRIM. P. 32.2 and 21 U.S.C. § 853(p).

Respectfully submitted,

Ashley C. Hoff
United States Attorney

By: _____
MICHELLE E. FERNALD
Assistant United States Attorney

*Seibert, David / Felony Information—Page 12 of 12*