UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

UNITED STATES OF AMERICA ) Docket No. A 21-CR-104(1) RP
                         )
vs.                      ) Austin, Texas
                         )
DAVID BYRON SEIBERT      ) June 11, 2021


      TRANSCRIPT OF INITIAL APPEARANCE/ARRAIGNMENT/PLEA
          BEFORE THE HONORABLE MARK P. LANE


APPEARANCES:

For the United States:    Ms. Michelle E. Fernald
                          Mr. Douglas W. Gardner
                          Assistant U.S. Attorney
                          903 San Jacinto Boulevard,
                          Suite 334
                          Austin, Texas 78701



For the Defendant:        Mr. Brian Roark
                          Botsford & Roark
                          1307 West Avenue
                          Austin, Texas 78701



Transcriber:              Ms. Lily Iva Reznik, CRR, RMR
                          501 West 5th Street, Suite 4153
                          Austin, Texas 78701
                          (512)391-8792







Proceedings reported by digital sound recording,
transcript produced by computer aided-transcription.

1                  (Proceedings commence at 1:21 p.m.)

2            THE CLERK:  The Court calls the following for

3    initial appearance and guilty plea:  1:21-CR-104, <u>The</u>

4    <u>United States of America vs. David Byron Seibert</u>.

5            MS. FERNALD:  Doug Gardner and Michelle Fernald

6    for the United States.

7            Good afternoon.

8            MR. ROARK:  Brian Roark for Mr. Seibert, your

9    Honor.

10            THE COURT:  Good afternoon to the lawyers.

11            Good afternoon to you, Mr. Seibert.  You are

12    here, as I understand it, for the purpose of the entry of

13    a plea.  If that is what you intend to do here today, here

14    in a moment, I'm going to ask you to take an oath, an oath

15    to tell the truth.  But I need to warn you, before you

16    take this oath, that everything that you say after doing

17    so must be truthful, otherwise, you subject yourself to

18    the penalties of perjury and false statement.

19            With that warning out of the way, sir, please,

20    raise your right hand and you'll be sworn.

21            THE CLERK:  Do you solemnly swear or affirm that

22    the testimony which you may give in this case before the

23    Court shall be the truth, the whole truth, and nothing but

24    the truth?

25            THE DEFENDANT:  I do.

1          THE COURT:  Thank you, Mr. Seibert.

2          Can I please get your full name, age and date of

3 birth for the record.

4          THE DEFENDANT:  David Byron Seibert, Jr., 56,

5 date of birth 10-10-64.

6          THE COURT:  Thank you.

7          In order to take your plea today, I'll be asking

8 you a series of questions.  If I ask you a question that

9 you don't understand, let me know that, and I'll rephrase

10 it for you because I want to ensure that you understand

11 everything that's happening this afternoon.

12          Now, Mr. Roark's here to continue to look out for

13 you.  If at any point during our discussion, you need time

14 to visit with your lawyer privately, let me know that, and

15 I'll give you as much time as you need to talk with your

16 lawyer.

17          The first issue that I need to discuss with you

18 is the fact you actually have the right to enter your plea

19 in front of the district judge who's ultimately going to

20 be responsible for determining your sentence.  And that's

21 -- in your case, it's District Judge Robert Pitman.  But

22 if you and your lawyer believe it's appropriate, you can

23 enter your plea this afternoon in front of a magistrate

24 judge, such as myself, instead.  And in this regard, I see

25 a form that's been signed by you and your lawyer that does

1   just that.

2         And so, let me just put it to you squarely.  Is

3   it your desire to waive and give up your right to enter

4   your plea in front of Judge Pitman and, instead, do it

5   this afternoon in front of me?

6         THE DEFENDANT:  Yes, your Honor.

7         THE COURT:  All right, sir.  Then that is what we

8   will do.

9         My next set of questions are going to be directed

10   to the attorneys.  The first is not so much a question.

11   But, Ms. Fernald, pursuant to the Due Process Protections

12   Act, as you undoubtedly know, the United States is

13   required to provide all exculpatory evidence as that is

14   defined by Brady vs. Maryland and its progeny.  Failure to

15   do so subjects the United States to potential -- a myriad

16   of sanctions, including dismissal and potential contempt

17   and sanctions.

18         Do you understand this warning, ma'am?

19         MS. FERNALD:  I do, your Honor.

20         THE COURT:  Thank you.

21         Mr. Roark, have you had enough time to visit with

22   your client about the charges that he faces in this case?

23         MR. ROARK:  I have, your Honor.

24         THE COURT:  Have you discussed any defenses to

25   the charges you believe that he might have had?

1          MR. ROARK:  I have, your Honor.

2          THE COURT:  And have you also spoken with him

3    about the number of important rights that he has, but

4    rights that he'll be giving up today, by offering a plea?

5          MR. ROARK:  I have.

6          THE COURT:  Have you also spoken with him about

7    the importance of the sentencing guidelines and the other

8    factors that Judge Pitman will consider in arriving at his

9    eventual sentence?

10         MR. ROARK:  We have discussed that at length,

11   your Honor.

12         THE COURT:  Very good.  And having done all this,

13   does he have a factual and rational understanding of what

14   he's charged with and what he's doing here today?

15         MR. ROARK:  I believe he does.

16         THE COURT:  And then, lastly, do you believe he's

17   competent to enter a plea?

18         MR. ROARK:  I believe he's competent.

19         THE COURT:  Thank you, Mr. Roark.

20         Mr. Seibert, have you had enough time to visit

21   with your lawyer about the charges that you face in this

22   case?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  And have you told him everything that

25   you know about the facts and circumstances that led to the

1    filing of these charges?

2             THE DEFENDANT:  Yes, your Honor.

3             THE COURT:  And are you suffering this afternoon

4    from any mental or physical condition, or are you under

5    the influence of any drugs, alcohol, or medicine that

6    interfere with your ability to understand my questions and

7    what we're doing here today?

8             THE DEFENDANT:  No, your Honor.

9             THE COURT:  Are you satisfied with the

10   representation that your lawyer's provided to you?

11            THE DEFENDANT:  Very much, your Honor.

12            THE COURT:  And just so there's no

13   misunderstanding, any complaints whatsoever about the

14   performance of your lawyer?

15            THE DEFENDANT:  No, your Honor.

16            THE COURT:  All right.  Thank you, sir.

17            Mr. Seibert, my understanding is that you're

18   proceeding this afternoon on the basis of a plea

19   agreement.  That is an agreement that you, your lawyer and

20   the lawyers for the government have reached with regard to

21   your case.  That document is lengthy.  It's now been

22   signed by everyone and is on file with the district

23   clerk's office.  And I have several questions for you

24   about it.

25            Before you signed your plea agreement, did you

1  read it in its entirety?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And before you signed your plea

4  agreement, did you review it carefully with your lawyer?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And before you signed that plea

7  agreement, was your lawyer able to answer any questions

8  that you had about its contents?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Reminding you that you're under oath,

11  are you telling me, then, that you understand this plea

12  agreement?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And do you agree to follow it and be

15  bound by it in the future?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right, sir.  I'm going to take

18  you at your word.  I'm not going to read this whole

19  document to you now.  However, there are a couple of

20  issues I need to address with you in greater detail.

21          First is very important.  It's set out on pages

22  10 and 11 of the plea agreement and basically it's this,

23  Mr. Seibert.  If Judge Pitman accepts this plea agreement

24  and sentences you pursuant to it, you'll be waiving and

25  giving up your right to an appeal in this case.

1          Do you understand this?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Just to elaborate briefly, it means

4   that you're giving up the right to complain about any

5   aspect of your conviction or your sentence on either a

6   direct appeal or later on down the road, when you're

7   serving your sentence.  Either way, you're giving up the

8   right to complain about any aspect of your conviction or

9   your sentence.

10         Do you understand the significance of this?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Now, you and your lawyer have

13  negotiated an important provision on page 3 -- well,

14  actually, there are several.  The first is a stipulation

15  between the party as to the loss amount.  Let me get my

16  bearings here.  Hold on.  Basically it's a nonbinding

17  agreement -- I'll talk about what that means in a minute

18  -- between you and the lawyers for the government that the

19  loss in your case as that term is defined under the wire

20  fraud statute is not greater than $25 million.

21         In addition to that, there's a non-binding

22  recommendation that the government will not recommend, I

23  guess, an upward departure or anything like that.  But

24  they can recommend a sentence as high as the upper end of

25  the guideline range.  That's possible.

1          And then, the last agreement is that the

2    government is going to -- agrees to recommend to the Court

3    that the sentences for both the wire fraud and

4    money-laundering counts be run concurrently, that is,

5    they're not stacked on top of each other.

6          Now, all of these agreements that I've just

7    mentioned are very important and, in my experience, Judge

8    Pitman will strongly consider them, but here's the

9    important "but."  Judge Pitman's not bound by that.  He

10   could determine that you're responsible for something

11   higher than 25 million, or that these sentences should be

12   stacked, or that a sentence above the guideline range is

13   appropriate.  The Judge could do all of that, and he

14   wouldn't be in violation of your plea agreement.

15         Do you understand this possibility?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  All right.  There are also some

18   important financial conditions in the plea agreement.  The

19   first is a requirement -- it's rooted in the law that is a

20   requirement that you pay restitution to any victims of the

21   offense for which you've pled guilty.  But in this plea

22   agreement, it makes it very clear that you're also going

23   to be required to pay a restitution attributable to any

24   relevant conduct as that term is described under the

25   guidelines.

1          Now, there's a very specific dollar amount here,

2    $10,794,508 in potential restitution, and again, in my

3    experience that's probably pretty close, given the amount

4    of investigative work the government's probably conducted.

5    But I'm just alerting you to the possibility that the

6    restitution could be higher if Judge Pitman determines it

7    should be higher.

8          Do you understand this?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  The other provision as it relates to

11   finances is financial -- the forfeiture of some property

12   and potential forfeiture an acquisition of money judgments

13   by the government.  That's set on pages 12 and 13 of your

14   plea agreement and there are one, two, three, four, four

15   specific items.

16         And then, it says any owe -- and all other items

17   used or intended to be used in the commission of the

18   criminal offenses and then, significantly a money judgment

19   there in the potential amount of $14,993,033.  These are

20   all forfeiture issues for which the government can move

21   forward and seek the forfeiture of your right, title and

22   interest in that specific property and in this money

23   judgment.

24         Do you understand all this, sir?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Ms. Fernald, or, Mr. Gardner,

2    anything else that y'all want me to talk about in this

3    plea agreement?

4          MS. FERNALD:  No, your Honor.

5          THE COURT:  And then, Mr. Roark, anything else

6    that you'd like me to address?

7          MR. ROARK:  No, your Honor.

8          THE COURT:  All right.  Thank you.

9          All right.  Mr. Seibert, the plea agreement

10   contemplates you enter a guilty plea to Count 1 of an

11   information that's been filed.  It's -- that information

12   is 12 pages long and it memorializes two separate criminal

13   violations.  The first being wire fraud, in violation of

14   Title 18, United States Code, Section 1343, as well as the

15   money-laundering charge, in violation of Title 18, United

16   States Code, Section 1957.

17          Now, like the plea agreement, this document is

18   lengthy, as well.  Before coming to court today, did you

19   read this entire charge?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And have you reviewed it carefully

22   with Mr. Roark?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And was he able to explain any

25   questions that you may have had about the contents of this

1   charge?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Charges, I should say.  Again,

4   reminding you that you're under oath, do you understand

5   what you're charged with in Count 1 and 2?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.  Well, again, sir, I'm

8   going to take you at your word.  I'm not going to read

9   this entire thing to you now but I -- it's necessary that

10  I read at least the hearts or guts of it.  And so, let's

11  start with the wire fraud count, which is Count 1.

12          It states that from in or about 2016, and

13  continuing until in or about May 2019, in the Western

14  District of Texas and elsewhere, that you having devised

15  and intended to devise a scheme and artifice to defraud

16  and to obtain money and property by means of false,

17  misleading and fraudulent pretenses, representations and

18  promises and omissions of material facts, that you did

19  knowingly cause to be transmitted by wire, radio or

20  television communication in interstate or foreign commerce

21  a wire transfer of funds constituting and containing a

22  writing, sign, signal, picture and sound for the purpose

23  of executing, and attempting to execute, the scheme and

24  artifice described in this indictment.

25          Are you with me so far?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  And then, having told me

3    that you've gone through this and understand it, it goes

4    on to list one, two, three, four, five, six different

5    wires, if you will, with investor names, dollar amounts

6    and dates.

7          And have you satisfied yourself that all of that

8    is accurate, as well?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, Mr. Seibert, if you do plead

11    guilty to Count 1, you'll be subjecting yourself to the

12    following statutory punishment range:  A term in federal

13    prison of not more than 20 years to be followed by a

14    supervised release term of not more than three years, a

15    fine that could be as high as $250,000 or twice the loss

16    or gain associated with the conduct to which you're

17    pleading, which given the dollar amounts we're talking

18    about is an astronomical amount of potential fine here

19    and, the least of your problems, a $100 mandatory special

20    assessment.

21          Do you understand the statutory range of

22    punishment in relation to Count 1?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  All right.  Mr. Seibert, Count 2 is

25    different.  It's a money-laundering count and charges from

1   in or about again 2016, and continuing until on or about

2   May of 2019, in the Western District of Texas, that you

3   did knowingly engage, and attempt to engage, in a monetary

4   transaction by, through, or to a financial institution

5   affecting interstate or foreign commerce in criminally

6   derived property of a value greater than $10,000, that is,

7   deposit, withdrawal, transfer, exchange of U.S. currency,

8   funds and money instruments -- monetary instruments.  Such

9   property have been derived from the specified unlawful

10  activity, that is, the wire fraud count that we spoke

11  about a moment ago in Count 1.  And like the wire fraud

12  count, the money-laundering count goes on to describe two

13  specific monetary transactions.

14          And have you satisfied yourself that those

15  monetary transactions are accurately described?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  All right.  If you do enter a plea of

18  guilty with regard to Count 2 of the indictment, Mr.

19  Seibert, you'll be subjecting yourself to another

20  statutory range of punishment:  A term -- excuse me, a

21  term in federal prison of not more than 10 years to be

22  followed by a supervised release term of not more than

23  three years, again, a fine of $250,000 or twice the loss

24  or gain associated with the conduct described in Count 2

25  and, again, a $100 mandatory special assessment.

1        Do you understand this separate statutory

2  punishment range?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  Now, I need to tell you that the

5  district judge in the case that you're pleading guilty to

6  here today has the right and the authority, though, as we

7  talked about earlier to stack these counts on top of each

8  other, meaning you could receive a sentence of putting

9  them together not more than 30 years in relation to these

10 two counts.

11       Do you understand this, at least this

12 possibility?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  All right.  There's no parole in our

15 federal system.  This means if you're required to serve a

16 penitentiary sentence, you need to go into this knowing

17 and believing you're going to serve all that time.  You're

18 not going to be released early on the equivalent of a

19 parole release as that phrase is commonly used with

20 reference to the Texas criminal justice system.

21       Instead, we have what's called supervised

22 release.  And what this means is, the day you complete

23 your prison sentence, you'll begin a term of supervised

24 release.  And while you're technically no longer in

25 custody, you will be required to comply with a number of

1  conditions that will be explained to you by the judge at

2  the time of your sentencing hearing.

3         But importantly, if you violate any of these

4  conditions, that term of supervised release can be

5  revoked, and you can be sent back to federal prison

6  without any credit for any time you may have served in

7  prison before the supervised release term began.

8         So do you understand that you're facing a term of

9  supervised release and what will happen if you violate its

10 condition?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Are you a U.S. citizen?

13        THE DEFENDANT:  Yes, sir.

14        THE COURT:  The district judge in making a

15 determination as to whether to accept your plea agreement

16 and as to what your eventual sentence will be is first

17 going to consult with something called the sentencing

18 guidelines.  These guidelines provide a framework within

19 which the judge is to examine your history and your

20 background as well as the nature and circumstances of the

21 offenses that you've pled guilty to.

22        When the judge has completed this investigation,

23 he arrives at what is called the appropriate sentencing

24 guideline range.  This is a range of punishment that the

25 judge should strongly consider in arriving at your

1  eventual sentence.  It typically extends from a low number

2  of months in prison to a higher number of months in

3  prison, between which the judge could sentence you, and

4  this is presumed to be a reasonable sentence.

5           But as important as these guidelines are, they're

6  not binding upon the judge.  This is because the judge is

7  obligated to consider and review a number of other

8  factors, as well, meaning you could receive a sentence

9  below that guideline range, but importantly, you could

10  receive a sentence above it.  If the judge were to do

11  either of these things, he would tell you why he was doing

12  it in open court, and it would be a function of his

13  obligation to review these other factors, factors I want

14  to summarize for you now.

15           They again include a careful review of your

16  history and your background as well as the nature and

17  circumstances of the offenses to which you have pled.  It

18  includes the seriousness of those offenses, the need to

19  promote respect for the law, the need to protect the

20  public, the need to provide you with a just punishment,

21  the need to deter you from committing criminal offenses

22  like this or others in the future, the need to treat you

23  fairly as compared to a man who's similarly situated and

24  charged, and lastly, the need to provide you with any

25  job-related training, medical care, educational

1  opportunities if the judge believed any of that was

2  appropriate in your case.

3          Now I've told you about the sentencing guidelines

4  and these other factors so that I can ask you several,

5  questions, the first of which is this:

6          Do you understand the important role that the

7  sentencing guidelines will play in arriving at your

8  sentence?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  But do you understand these

11  guidelines are not binding upon Judge Pitman, and he's

12  also going to review these other factors, as well, in

13  arriving at that sentence?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Now, as you may recall when we got

16  started, I asked Mr. Roark if he had spoken with you about

17  the guidelines and these factors, and he told me that he

18  had done that and that doesn't surprise me.  Mr. Roark's a

19  good lawyer and that's what good lawyers are supposed to

20  do.  They're supposed to share with you their wisdom and

21  their experience as it relates to what they believe the

22  district judge may or may not do at your sentencing

23  hearing.

24          Mr. Roark has probably gone so far as to attempt

25  to predict that guideline range, and again, that's

1    perfectly appropriate.  That's what he's supposed to do.

2    But do you recognize that all of that is his best guess

3    and estimate?  None of that is binding upon Judge Pitman,

4    and Judge Pitman will arrive at his own independent

5    conclusion as to what your sentence should be.

6              Do you understand this distinction?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  So here's the very difficult position

9    that you're in, Mr. Seibert, before you offer a plea.  You

10   simply do not know what your sentence will be.  All you

11   know with certainty is that it will not be greater than 30

12   years in federal prison.

13             Do you understand this?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Mr. Seibert, by entering pleas today,

16   you'll be waiving and giving up certain valuable rights,

17   rights that I want to summarize for you now.  These rights

18   include a continuing right to plead not guilty to these

19   charges.  You have a right to put the prosecutors over

20   there to their burden of proving beyond a reasonable doubt

21   each and every element of the criminal offenses you're

22   charged with.

23             They would be required to do this at a jury

24   trial, which means that twelve people from the local

25   community would be selected to sit and listen to the

1   evidence in your case.  And before you could be found

2   guilty by that jury, they must unanimously agree and

3   find -- that means all twelve of them -- that the

4   government had proven these charges beyond a reasonable

5   doubt.

6          Now, during that entire process your attorney

7   would continue to represent you and be free to question,

8   cross-examine, test and challenge any evidence that the

9   government presented.  Although not required to do so,

10  your lawyer can call witnesses on your behalf and in your

11  defense.  He actually has the power to subpoena and compel

12  witnesses to do so, and one of those witness, of course,

13  can be you.  You have the right to testify at your trial,

14  but importantly, you're not required to do that.

15         If you decided not to testify, no one would make

16  you testify.  And that jury I spoke of a moment ago, they

17  would be specifically instructed by the judge that they

18  could not take into account your decision to remain silent

19  in making their final determination as to whether or not

20  the government had proven these charges against you beyond

21  a reasonable doubt.

22         Did you understand this summary of rights that I

23  just gave?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you understand that by offering a

1  plea or pleas today, Mr. Seibert, you'll be waiving and

2  giving up these rights?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  Is it still your desire to enter

5  pleas today?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  All right.  Mr. Seibert, recalling

8  the charge in Count 1 as well as the charge in Count 2 of

9  the information -- whoops, before I get to that.

10        An information means that in your case, the

11  federal prosecutors have sworn out the charges against

12  you.  There's nothing wrong with this.  The law provides

13  for it and it happens all the time.  But you do have the

14  right to have this matter presented to the local federal

15  grand jury for an independent determination as to whether

16  or not there's probable cause to believe that you've

17  actually committed this offense.

18        But if you and your lawyer believe it's

19  appropriate, you can, instead, proceed on the basis of the

20  information that we went over with -- together earlier.

21  So and in this regard, I have in front of me a document

22  that's been signed by you and your lawyer entitled Waiver

23  of Indictment.

24        My question to you, to the point is, are you

25  waiving and giving up your right to a presentation to a

1  grand jury and a independent determination of probable

2  cause by way of indictment, and instead, are you electing

3  to proceed on the basis of an information?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  All right, sir.  Then that's what

6  we'll do and now I'll get to the point.

7           Understanding the charges in Counts 1 and 2 of

8  the information, recalling the statutory punishment ranges

9  that you face in relation to those two charges, and

10 understanding the important rights that you have, but

11 rights that you'll be giving up, by offering a plea, how

12 do you plead to the charge that you violated Count 1,

13 guilty or not guilty?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  And how do you plead to the charge

16 that you violated Count 2, guilty or not guilty?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  Are you pleading guilty freely and

19 voluntarily?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Has anyone forced or threatened you

22 in any way to get you to plead guilty?

23          THE DEFENDANT:  None whatsoever.

24          THE COURT:  Other than the benefits of your plea

25 agreement, has anyone promised you any benefits in

1   exchange for your plea?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Has anyone promised or guaranteed in

4   advance what your eventual sentence will be in exchange

5   for your plea?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Mr. Seibert, recalling that you're

8   under oath, are you telling me that you're pleading guilty

9   to these two charges because you're guilty of them and for

10  no other reason?

11         THE DEFENDANT:  I'm guilty.  Yes, sir.

12         THE COURT:  All right, Mr. Seibert.  We're almost

13  done.  I have a final obligation to find that there's a

14  factual basis or an independent reason to believe that you

15  actually committed this offense.  We've talked about your

16  plea agreement, but importantly, on pages 3, 4, 5, 6, 7, 8

17  and 9, the prosecutors have set out in detail the facts

18  that they believe they would have proven beyond a

19  reasonable doubt if called upon to do so at a trial in

20  your case.

21         Now I'm asking you specifically as it relates to

22  those facts, are they accurate?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  To the extent they described your

25  behavior and what you did wrong, are they true?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  All right.  Mr. Seibert, I am going

3    to find that your pleas to Counts 1 and 2 of the

4    information have been freely and voluntarily made; that

5    you understand those two separate charges; that you

6    understand those two separate statutory punishment ranges

7    and the fact that they can be combined together; that you

8    understand the important rights that you have, but rights

9    that you have given up, by offering a plea; that you are

10   satisfied with the work that Mr. Roark's done for you in

11   this case; and that you are competent to enter a plea.

12             I'm also going to find that before you signed

13   your plea agreement, you read it, you reviewed it with

14   your lawyer.  Your lawyer was able to answer any questions

15   that you had about its contents, you understand it, and

16   you agree to follow it and be bound by it in the future.

17             And then, lastly, I am going to find that there's

18   a factual basis or an independent reason to believe that

19   you've committed those two offenses that's based upon the

20   written facts that are set out within your plea agreement,

21   which absent an objection from either you or your lawyer

22   at this time, I intend to adopt for purposes of this plea

23   hearing; but it's also based upon your sworn testimony

24   here just a moment ago that those facts as applied to you

25   are true.

1          Having said all of this, your case will now be

2     referred to the probation office for the preparation of a

3     presentence report.  A written draft of this report will

4     be shared with you and your lawyer well before your

5     sentencing hearing.  Importantly, you'll have 14 days

6     after receiving a copy of this draft report to make any

7     objections to it.

8          From that point until your eventual sentencing

9     hearing, your attorney will continue to work with the

10    people in the probation office to resolve any objections

11    that you may have had to that draft report.  Any

12    objections that cannot be resolved to your satisfaction

13    before the final report is prepared and your day of

14    sentencing arrives, those continuing objections will be

15    resolved by Judge Pitman at the time of your sentencing

16    hearing.

17         That's a brief description of what's going to be

18    happening, at least here within this courthouse, between

19    now and your sentencing date, and it brings our discussion

20    this morning -- or this afternoon to an end.

21         Mr. Seibert, do you have any questions for me

22    about any of the important issues we've talked about or

23    any questions about what's going to be happening next?

24         THE DEFENDANT:  No, your Honor.  You were very

25    thorough.  Thank you.

1           THE COURT:  You're welcome.

2           Mr. Seibert, my understanding is that this is

3    your first day in court in relation to this charge.

4           Is that right, Mr. Roark?

5           MR. ROARK:  It's correct, your Honor.

6           THE COURT:  So we have a couple of administrative

7    things that we need to go over, that is the conditions

8    governing your release, because I trust the prosecutors

9    are not seeking this man's detention.

10          MS. FERNALD:  That's correct, your Honor.

11          THE COURT:  All right.  I know that you have

12   visited with the Pretrial Services Office.  They're of the

13   opinion that there are conditions I could set that could

14   provide for the safety of the community and your

15   appearance in court.  I've talked with them, I agree with

16   them.  So my obligation now is to go over these conditions

17   carefully with you and so, here it goes.

18          First condition is that you're going to be

19   required to post an unsecured bond in the amount of

20   $50,000.  Now, it's unsecured because you really don't

21   have to post any money.  What it does mean is, if you

22   violate any of these conditions, the government can use

23   this appearance bond to obtain a judgment against you and

24   then, use that judgment to levy against any property that

25   you have now or in the future.

1        So a bunch of steps have to take place.  And,

2  quite frankly, your financial obligations are going to be

3  such that this is rather not meaningless but it's not all

4  that.

5        But do you understand this so far?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  Okay.  The first condition is that

8  you agree not to violate any federal, state or local laws.

9  You're to cooperate in the collection of a DNA sample, if

10  one is requested of you, by an authorized official.  You

11  are to advise the Court by and through your Pretrial

12  Services officer in advance and in writing of any changes

13  to your primary contact telephone number or your primary

14  residence, that is, where you live.

15        And it should go without saying, you must appear

16  in court when you're supposed to.  Mr. Roark will help you

17  with that.  But ultimately, it's your responsibility to be

18  in court on the appropriate date and at the appropriate

19  time.

20        Are you with me so far?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Your release is going to be

23  supervised by the people in the Pretrial Services Office.

24  In simple terms, you need to do whatever they tell you to

25  do, whenever they tell you to do it.  You're to continue

1    or actively seek employment.  You're to surrender your

2    passport, if you haven't already, to the U.S. Pretrial

3    Services Office.

4           You're not to obtain another passport or other

5    international travel document.  Your travel is restricted

6    to Travis County and the counties that immediately

7    surround Travis County.  Travel outside of those counties

8    is prohibited unless you get the advance permission of

9    your Pretrial Services officer.

10          You're to avoid all contact, directly or

11   indirectly, with any person who is or may be a victim or

12   witness of the investigation or prosecution.  You're to

13   get medical or psychiatric treatment if the Pretrial

14   Services Office believes that's appropriate.  You're not

15   to possess -- my understanding is, you don't have

16   failures.

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Good.  You're not to possess a

19   firearm, destructive device or weapon of any kind.  You're

20   not to use alcohol excessively.  You're not to use or

21   unlawfully possess a narcotic drug or other controlled

22   substance unless it's prescribed to you by a doctor.  You

23   are not to obtain any new lines of credit or bank

24   accounts, from this point forward, without obtaining

25   permission of Pretrial Services.

1      This one's going to be hard, but in these kind of

2  cases, we've gotta do it.  You have to certify within 30

3  days that all of your current clients are notified of this

4  pending federal case, and you'll need to do that to the

5  satisfaction of Pretrial.  And future clients need to be

6  so advised.

7      And then, lastly, today, when you and I are done

8  visiting, you're going to need to go down to the third

9  floor for processing by the Marshal's Service.  That's the

10  printing, fingerprinting -- fingerprinting, photograph,

11  that kind of thing.  And then, you'll get last

12  instructions from Mr. Palomares or one of his colleagues

13  in Pretrial, and then, you're released from this

14  courthouse today as authorized.

15      Do you understand all the conditions I've gone

16  over with you?

17      THE DEFENDANT:  Yes, your Honor.

18      THE COURT:  I'm required to tell you what will

19  happen if you fail to abide by any of these conditions.

20  In simple terms, a warrant's going to be issued for your

21  arrest.  Like Mr. Mahaffee here a minute ago, if you get

22  arrested, you'll probably be detained until your case is

23  concluded.

24      Now, besides the obvious inconvenience of sitting

25  in jail when you didn't need to be there is the fact that

1  that's going to work a hardship upon you and your lawyer

2  to prepare for this sentencing hearing.  So it's

3  critically important that you abide by these conditions.

4  The law provides there are certain types of violations

5  that carry with it the possibility of new criminal

6  charges, such as if you fail to appear in court when

7  you're supposed to, you can be charged with failure to

8  appear, brand-new criminal offense.

9          Similarly if you obstruct justice within the

10  meaning of the law, you can charged with obstruction of

11  justice.  In my experience, that manifests itself with a

12  man who's been charged with a crime and is reaching back,

13  trying to talk to witnesses or, in your case, investors.

14  Just don't do it.  It sounds like you've been very

15  cooperative with the government.  You've hired a really

16  good lawyer, let them -- let your lawyer work with them to

17  do any of that type of work.

18          So do you understand these warnings, as well?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  All right.  You and I know each other

21  by sight.  I do wish you good luck, sir, as this case

22  moves forward.  And you have my word that this is between

23  you and I in this public courtroom, all right?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  Good luck, y'all.

1        MR. ROARK:  Thank you, Judge.

2        (Proceedings conclude at 1:52 p.m.)

3

4

5

6

7

8                    REPORTER'S CERTIFICATE

9

10    I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING

11   WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE

12   TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT

13   TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE

14   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE

15   TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY

16   THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES.

17

18   */s/Lily I. Reznik*              July 28, 2021

19   LILY I. REZNIK, CRR, RMR              DATE
     Official Court Reporter
20   United States District Court
     Austin Division
21   501 W. 5th Street, Suite 4153
     Austin, Texas 78701
22   (512)391-8792
     SOT Certification No. 4481
23   Expires:  1-31-23

24

25